## Charles Glanz v. Anna M. Smith.

1. INSOLVENCY—*Preferences May be Acquired.*—Under the existing statutes of this State, and in the absence of any national bankruptcy law, a creditor may legally acquire a preference in the security or payment of a *bona fide* debt, when there is neither fraud on the part of the creditor nor collusion with the debtor.

2. VOLUNTARY ASSIGNMENTS—*Preferences Under.*—Section 13 of the Assignment Act which prohibits preferences among creditors, is directed toward insolvent debtors, and is intended to limit and regulate their course of conduct, after they have determined to yield the dominion and control of their property for the benefit of creditors, by making a general assignment. It has no application to the conduct of creditors, except in case of collusion with debtors, by which an authorized preference is sought to be made. The creditor may, notwithstanding the statute, take steps to secure his debt as best he can. The law does not deprive a creditor of the fruits of superior diligence in securing his indebtedness so long as he does no act resulting in an unlawful preference by the debtor.

3. SAME—*Where Security or Payment is Obtained.*—Where security or payment is obtained in such a manner as to be treated as having been acquired under or as a part of a general assignment by the debtor, it is a fraud and will not be sustained.

4. ESTOPPEL—*Of a Party by His Pleadings.*—A party litigant will be estopped from denying the allegations of his own pleading.

Insolvency Proceedings.—Intervening petition. Trial in the County Court of Cook County; the Hon. ORRIN N. CARTER, Judge, presiding. Hearing and decree denying the petition. Appeal by petitioner. Heard in the Branch Appellate Court, First District, at the March term, 1898. Affirmed. Opinion filed June 21, 1898.

### STATEMENT.

September 8, 1896, the appellee received the sum of $1,000 in payment of a life insurance policy taken out by her son, who had died a few weeks before. That money was loaned to John Karlstrand, her son-in-law.

Mr. J. N. Hennings, Karlstrand's bookkeeper, who had acted as the agent of the appellee in making proof of claim and in collecting the money from the life insurance company, and in whose hands the appellee had placed the $1,000,

refused to turn the money over to Karlstrand unless he executed a judgment note for that sum in favor of appellee. Karlstrand accordingly executed the note, delivered it to Hennings September 8, 1896, and the money was used in his business, the books of the insolvent showing that the appellant received $355 from Karlstrand within ten days after the loan was made.

November 20, 1896, Hennings, who had in his possession and care said judgment note, became alarmed at the condition of Karlstrand's business and consulted Karlstrand's attorney, Mr. Strickler. He informed Mr. Strickler that he was appellee's agent, and that he was holding the judgment note for her, and said if there was going to be any trouble for Karlstrand he thought he would have to enter the judgment. Mr. Strickler requested him not to do it, but to let Karlstrand go ahead with the business and see if he could straighten it out, and to this Hennings consented.

Again, a week later, Hennings called on Strickler and told him that he was afraid he would be obliged to enter up judgment. Strickler again asked him to give Karlstrand more time, and Hennings consented to wait. Up to this time Hennings had not informed Karlstrand of his conversations with Strickler, or that he had any intention of entering judgment on the note.

November 28, 1896, Hennings again called on Strickler, and after a short consultation Strickler sent for Karlstrand, the insolvent. Strickler then told Karlstrand that Hennings had been there and talked with him about the note, and told Karlstrand if Hennings should enter up judgment that he would be obliged to make an assignment. Strickler refused to have anything to do with the judgment note because he was Karlstrand's attorney, but said that he would recommend another lawyer to Hennings. Strickler again requested Hennings to let Karlstrand go on with his business. Hennings again consented, but on December 1, 1896, placed the matter in the hands of appellee's attorney, who entered judgment upon the note December 2, 1896, and an execution was levied under this judgment the following day at 9:40

A. M. The same day Karlstrand made a voluntary assignment with Hennings as assignee, but Hennings resigned December 5, 1896, and the Chicago Title and Trust Company was appointed as his successor. December 9, 1896, the Chicago Title and Trust Company presented its petition, representing that the sheriff of Cook county was in possession of. the property of Karlstrand by virtue of said execution, and that if the property were sold by the sheriff it would result in loss to the estate, and asking that the assignee be allowed to take the property from the sheriff, preserving the priority of the lien of said execution, and on the same day. the court ordered the assignee to take possession of the property, subject in all respects to the lien of the execution and the right of appellee; and that the lien of said execution should attach to the net proceeds of the said property in the hands of the said assignee, and that the said judgment creditor should first be paid out of the proceeds of said property, leaving, however, to be determined in the County Court the question of the priority of such lien upon the application of any creditor.

December 18, 1896, appellant filed his petition in the County Court, setting forth the entry of said judgment; that said execution had been issued and levy thereof made on the property of Karlstrand; that the judgment note given to appellee was without consideration; that the entering of said judgment and the filing of the deed of assignment constituted an illegal preference under the statute, and were the result of fraud and collusion on the part of the insolvent and judgment creditor. The petitioner prayed that appellee answer petition, but did not waive answer under oath.

January 15, 1897, the appellee filed her answer under oath, denying that the note was not for a sufficient and valuable consideration, and that there was fraud in the giving of the note or in the entering of said judgment, and denying that there was any collusion between the appellee and Karlstrand, the insolvent, and denying that there was any fraud or collusion between Karlstrand, Hennings and

the appellee in the entering of judgment, levy of execution and filing of the deed of assignment. The answer sets forth under oath the facts concerning the loan of $1,000 cash September 8, 1896, and the giving of the judgment note, and alleges that the transaction was *bona fide*, without any fraudulent intention whatever. A hearing was had upon the issues raised by said petition and answer in the County Court of Cook County, and final decree was entered June 14, 1897, finding the execution to be a prior lien upon the property of the insolvent levied upon by the sheriff, denying the petition of appellant and declaring the judgment to be a first and prior lien upon the net proceeds of said property then in possession of the assignee, from which decree the appellant prayed an appeal to this court.

James A. Peterson, attorney for appellant.

John M. Curran, attorney for appellee.

Mr. Justice Horton, after making the foregoing statement, delivered the opinion of the court.

There is no reversible error in the proceedings of the County Court. There is no question but that the money loaned by appellee to Karlstrand was her money. She did not receive it from, or by reason of any act of, Karlstrand. A judgment note was given by Karlstrand, payable to the order of appellee, at the time the money was loaned. The testimony shows no collusion between appellee or her agent and Karlstrand. On the contrary Karlstrand's attorney tried to induce appellee's agent not to enter judgment. The judgment was not entered until about three months after the note was given, nor by reason of any agreement made at the time it was given. We see no evidence of fraud or collusion, actual or constructive, by, or on the part of, appellee.

Since the adoption of the assignment act, twenty years since, the courts of this State have been many times called upon to construe its provisions and to apply the same. It

is not deemed necessary to now attempt a review of all such cases. It is the settled rule in this State, under the existing statutes, and in the absence of any national bankruptcy law, that a creditor may legally acquire a preference in the security or payment of a *bona fide* debt, where there is neither fraud on the part of the creditor nor collusion with the debtor. Where security or payment is obtained in such manner as to be treated as having been acquired under or as a part of a general assignment by the debtor, that is a fraud and will not be sustained.

The most recent concise statement of the rule by our Supreme Court is found in Plume & Atwood Mfg. Co. v. Caldwell, 136 Ill. 163, 169, where it is stated that "Section 13 of the Assignment Act, which prohibits preference among creditors, is directed toward insolvent debtors, and is intended to limit and regulate their course of conduct after they have determined to yield the dominion and control of their property for the benefit of creditors, by making a general assignment. It has no application to the conduct of creditors, except in case of collusion with debtors, by which an unauthorized preference is sought to be made. The creditor may, notwithstanding the statute, take steps to secure his debt as best he can. The law does not deprive a creditor of the fruits of superior diligence in securing his indebtedness, so long as he does no act resulting in an unlawful preference by the debtor."

The facts in the case at bar do not show that appellee obtained any illegal preference.

A separate and distinct point in appellant's brief is: "There is no evidence upon which to sustain the alleged preference, viz.—no execution and levy thereof appearing in the record."

We are unable to discover any good reason for this statement. This case is before the court upon the issues raised by the allegations of the intervening petition of this appellant. It is true that the abstract of record filed by appellant's attorney does not show it, but the record shows that in said petition by appellant this allegation appears:

West Side Auction House Co. v. Conn. Mut. Life Ins. Co.

" Your petitioner further represents unto your honors that° execution was issued by the Circuit Court of Cook County, Illinois, and placed in the hands of the sheriff of Cook county at twenty (20) minutes after nine o'clock in the forenoon on December 3, 1896, and that levy was made thereon twenty (20) minutes thereafter upon the property of said John Karlstrand."

Counsel must know that where this allegation appears in his own petition, it was not necessary for appellee to prove the facts there stated.

The judgment of the County Court is affirmed.